**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **BRENDA ADKINS** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | **Case No. 10 C 8279** |
| **v.** | ) | |
| | ) | **Judge Milton I. Shadur** |
| **LOCAL 705 INTERNATIONAL** | ) | |
| **BROTHERHOOD OF TEAMSTERS** | ) | |
| **PENSION PLAN** | ) | |
| | ) | |
| **Defendant** | ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN**
**SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant Local 705 International Brotherhood of Teamsters Pension Plan (the Plan), by and through its attorneys, K&L Gates LLP, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, respectfully submits the following Memorandum of Law in Support of Its Motion for Summary Judgment on the Complaint filed by Brenda Adkins (Adkins):

**I.      Introduction**

Adkins alleges two, apparently alternative, claims. In Count I, Adkins alleges that she is entitled to pension benefits under the Plan pursuant to the Employment Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* (ERISA), based on her employment with Gas City, Ltd., and its successor, A. D. Conner (collectively, A.D. Conner) between February 1995 and November 2006 (the Relevant Period). But Adkins was not a member of the bargaining unit and she never performed covered bargaining-unit work during the Relevant Period that would entitle her to pension benefits under the Plan.

In Count II, Adkins alleges that she is entitled to "restitution" under "federal common law." But Adkins has no standing to maintain a suit for equitable "restitution" of contributions

mistakenly made by her employer, as only an "employer" may (under some circumstances) seek the return of contributions it mistakenly has made to a plan. In any event, awarding the mistaken pension contributions at issue to Adkins would be **inequitable**. Adkins never was entitled to have her employer make such contributions on her behalf. Moreover, A.D. Conner owes the Plan hundreds of thousands of dollars in delinquent contributions that should have been paid for the benefit of **bona fide** participants. The Plan has sued A.D. Conner to recover these delinquent contributions and other damages and it is possible that A.D. Conner could assert any contributions it mistakenly made on behalf of Adkins and others as an offset against amounts it should have paid but did not. Under the circumstances, awarding Adkins the contributions at issue could expose the Plan (and bona fide participants) to a net loss of contributions that should have been paid even if the Plan recovers all amounts due from A.D. Conner. Adkins therefore has no basis in equity to the contributions at issue, as retention by the Plan of such mistaken contributions does not constitute unjust enrichment, awarding the contributions to Adkins would result in a windfall, and such "restitution" could harm the financial integrity of the Plan and would unfairly penalize bona fide Plan participants on whose behalf A.D. Conner should have made contributions but did not.

## II.    Undisputed Material Facts[1]

The Plan is a multiemployer employee pension benefit plan within the meaning of 29 U.S.C. § 1002(2) and 1002(37), with offices located at 1645 West Jackson Boulevard., Chicago, Illinois 60612. Complaint and Answer. Adkins resides in Frankfort, Illinois. *Id.*

---

[1]    During the status hearing on March 25, 2011, and in light of the summary judgment papers previously filed in this case, the Court instructed the parties that they did not need to again file formal Rule 56 statements of fact, but could recite the undisputed material facts in their respective summary judgment motion papers in a more informal manner. Accordingly, the Plan has attached the Affidavit of Jack Witt in support of its current Motion for Summary Judgment.

Adkins is a former employee of Gas City, Ltd. and its successor A. D. Conner (collectively A. D. Conner). Defendant's Answer, ¶ 3. Adkins was employed by A. D. Conner between February 1995 and November 2006 (the Relevant Period). *Id.* During the Relevant Period, Adkins was employed solely as a dispatcher. Complaint and Answer, ¶ 5; Declaration of Jack Witt, ¶¶ 12-13, attached as Exhibit A.

A. D. Conner was a participating employer in the Plan. Witt Aff., ¶ 4; Complaint and Answer, ¶ 6. A. D. Conner and Local Union 705 of the International Brotherhood of Teamsters, AFL-CIO (the Union), entered into collective bargaining agreements, pursuant to which A. D. Conner agreed to make pension contributions on behalf of members of the bargaining unit who performed bargaining unit work. Witt Aff., ¶ 5; Complaint and Answer, ¶ 6.

The collective bargaining agreements between the Union and A. D. Conner provided:

> The bargaining unit shall consist of **all the Employer's drivers** employed at locations [covered by the agreements] **who make deliveries** of petroleum products, caustics, chemicals and all related products of any nature and description however packaged or contained to or from any Bulk Plant, Refinery Pipe Line Terminal, Bulk Storage Terminal or facility, Water Terminal and customer.

Witt Aff., ¶ 7 (emphasis supplied). In addition, the collective bargaining agreements provided that "[t]he duties of the Employees [covered by the agreements]," i.e., bargaining-unit work:

> [S]hall consist of **driving the Employer's truck and delivering the contents** to and from the aforesaid locations

Witt Aff., ¶ 8 (emphasis supplied).

During the Relevant Period, Article 8, Section 3 of the Pension Plan provided:

> Only the Administrator (subject to appeal) and the Trustees have the authority to determine the eligibility for benefits and the right to participate in the Pension Fund, and the exercise of all the other powers specified in the Plan. The Trustees shall have full discretionary authority to construe and interpret the terms of the Fund Trust Agreement, the Plan, the Plan documents, and the

3

> procedures of the Fund and Plan, and to determine eligibility for, entitlement to, and the amount of Plan benefits in accordance with Plan terms. Benefits under this Plan will be paid only if the Administrator (subject to appeal) and the Trustees decide in their discretion that the applicant is entitled to them. The Trustees may, in their sole discretion, modify, amend or terminate the Plan in any manner or at any time. No officer, agent or employee of the Union, or Employer, or any other person, is authorized to speak for, or on behalf of, or to commit the Trustee or Administrator, or any matter relating to the Pension Fund or Plan.

Witt Aff., ¶ 10. Article 9, Section 7 of the Trust Agreement that created the Plan provided:

> The Trustees shall have full discretionary authority to construe, and interpret the terms of, the Trust Agreement, the Plan, the Plan documents, the policies, rules, regulations, and procedures of this Fund and the Plan, motions and other parties of the minutes of Trustees' meetings, and all other documents and written materials used by or applicable to this Fund or the Plan, and to determine eligibility for, entitlement to, and the amount of Plan benefits in accordance with Plan terms. The Trustees' interpretation shall be binding on the parties hereto, Employers, Employees, Participants in the Pension Plan, and all other persons.

Witt Aff., ¶ 11.

The collective bargaining agreements between the Union and A. D. Conner provided that:

> The Trustees of the Fund shall have the sole power (a) to construe the provisions of the Trust Agreement and rules and regulations and all terms used therein, and (b) to determine all disputes with respect to eligibility, the right to participate in benefits of the Fund, time, method of payment and related matters, and any construction adopted or determination made by the Trustees in good faith shall be final and binding upon all Employers, Employees, participants, legal representatives, dependents, relatives and all persons and parties.

Witt Aff., ¶ 9.

Adkins did not pay contributions to the Plan. Witt Aff., ¶ 14. The contributions that A.D. Conner made to the Plan on behalf of Adkins were not deducted from her pay. Witt Aff., ¶ 15. The Plan does not maintain separate accounts that segregate an employer's pension contributions by employee, i.e., there is no Brenda Adkins "account." Witt Aff., ¶ 16.

4

The Plan has sued A.D. Conner in the United States District Court for the Northern District of Illinois, Docket No. 10 C 6352, and seeks more than $1,000,000 in unpaid contributions, interest, penalties, and other sums. Witt Aff., ¶ 17. The Complaint is attached as Exhibit B. For the period March through July 2010 alone, A.D. Conner owes, but has not paid, pension contributions totaling $387,932.00. Witt Aff., ¶ 18. The contributions A.D. Conner mistakenly made on Adkins' behalf amount to less than $40,000. Witt Aff., ¶ 19.

### III.     Argument

#### A.     Adkins is not entitled to benefits because she was not a bargaining unit member and never performed covered bargaining-unit work

The Plan is entitled to summary judgment on Count I and Adkins is not entitled to pension benefits under the Plan because Adkins was not a member of the bargaining unit and she never performed covered bargaining-unit work during her employment with A. D. Conner.

A. D. Conner was obligated to make pension contributions to the Plan on behalf of members of the bargaining unit who performed bargaining-unit work, as those terms are defined in the relevant collective bargaining agreements between A. D. Conner and the Union. Witt Aff., ¶ 9. Specifically, the relevant collective bargaining agreements expressly provided:

> The bargaining unit shall consist of **all the Employer's drivers** employed at locations [covered by the agreements] **who make deliveries** of petroleum products, caustics, chemicals and all related products of any nature and description however packaged or contained to or from any Bulk Plant, Refinery Pipe Line Terminal, Bulk Storage Terminal or facility, Water Terminal and customer.

Witt Aff., ¶ 10 (emphasis supplied). The agreements provided that bargaining unit duties:

> [S]hall consist of **driving the Employer's truck and delivering the contents** to and from the aforesaid locations

Witt Aff., ¶ 11 (emphasis supplied).

It is undisputed that A. D. Conner employed Adkins solely as a dispatcher and never as a

5

driver. Complaint and Answer, ¶ 5; Witt Aff., ¶ 13. Adkins therefore was not a member of the bargaining unit and never performed covered bargaining-unit work under the applicable collective bargaining agreements. Adkins therefore is not entitled to pension benefits under the plain terms of the Plan. Moreover, summary judgment is particularly appropriate because the Plan's determination that Adkins never performed covered bargaining-unit work and is not entitled to pension benefits is entitled to deferential review by this Court.

Where plan administrators exercise discretion to deny a claimant's eligibility for benefits, a court merely reviews whether the decision was arbitrary and capricious. *Ramsey v. Hercules, Inc.,* 77 F.3d 199, 202-03 (7th Cir. 1996). *See also Morton v. Smith,* 91 F.3d 867, 870 (7th Cir. 1996) (where "fiduciaries are bound to interpret the plan under the broad standard of good faith, their discretion is even more extensive, and judicial review is even more deferential" and "Courts will then examine the exercise of this degree of discretion to determine whether it is arbitrary and capricious"). There are "no magic words" that confer discretion on a plan administrator. *Chojnacki v. Georgia-Pacific Corp.,* 108 F.3d 810, 814 (7th Cir. 1997). But the Seventh Circuit has stated that language to the effect that "benefits under this plan will be paid only if the plan administrator decides in his discretion that the applicant is entitled to them" is a "safe harbor" that will ensure application of the arbitrary-and-capricious standard of review. *Herzberger v. Standard Ins. Co.,* 205 F.3d 327, 331 (7th Cir. 1996).

Under the arbitrary-and-capricious standard, courts will uphold the administrator's decision so long as the decision is based on a reasonable interpretation of the plan's language and the evidence in the case. *Daill v. Sheet Metal Workers' Local 73,* 100 F.3d 62, 68 (7th Cir. 1996). Arguments over the sufficiency of evidence submitted to the plan administrator cannot demonstrate arbitrariness or capriciousness where there is evidence in the record that supports

6

the plan administrator's reasons or decision. *See Exbom v. Central States, S.E. and S.W. Areas Health and Welfare Fund,* 900 F.2d 1138, 1144 (7th Cir. 1990) (existence of conflicting evidence in record did not provide a basis to find plan administrator's decision was arbitrary or capricious). In other words, "[a]ll questions of judgment are left to the administrators, and a court must be very confident that the administrators overlooked something important or seriously erred in appreciating the significance of the evidence to overturn the administrator's determination." *Jones v. General Motors Pension Plan,* 1998 U.S.Dist. LEXIS 17526, *12 (N.D.Ill. 1998). Plaintiff must show the plan's decision is "not just a clearly incorrect but downright unreasonable." *Morton,* 91 F.3d at 870.

The Trustees and Plan Administrator plainly exercise discretion and are entitled to application of the arbitrary-and-capricious standard of review. Indeed, the Plan contains the "safe harbor" language recognized by the Seventh Circuit in *Herzberger. See* Witt Aff., ¶¶ 10, 11 (quoting and discussing Article 8, Section 3 of the Pension Plan and Article 9, Section 7 of the Trust Agreement that created the Plan respectively). The collective bargaining agreements also tracked the Plan and Trust Agreement language regarding the discretion of the Trustees to exercise discretion in making eligibility determinations. Witt Aff., ¶ 9.

Nevertheless, Adkins alleges that "A.D. Conner and Local 705 considered dispatchers and mechanics covered employees and part of the bargaining unit." Complaint, ¶ 6. But "ERISA instructs courts to enforce strictly the terms of plans." *Riordan v. Commonwealth Edison Co.,* 128 F.3d 549, 553 (7th Cir. 1997). Strict enforcement of plan terms is necessary because "[o]ne of ERISA's primary purposes is to ensure the integrity of written plans." *Admin. Comm. Of Wal-Mart Stores, Inc. v. Varco,* 338 F.3d 680, 691 (7th Cir. 1998). In particular, courts have found that one of Congress' main purposes in enacting ERISA was to "protect the

7

financial integrity of pension and welfare plans by confining each parties' obligations to the terms of the plans as written." *Pohl v. National Benefits Consultants, Inc.,* 956 F.2d 126, 128 (7th Cir. 1992). A "multi-employer pension agreement is not a normal two-party contract for which evidence of idiosyncratic meaning may be used to depart from the objective meaning of the words." *Central States, Southeast and Southwest Areas Pension Fund v. Central Cartage Co.,* 69 F.3d 1312, 1315 (7th Cir. 1995). *Accord Dugan v. Smerwick Sewerage Co.,* 142 F.3d 398, 404 (7th Cir. 1998). Accordingly, the Plan is entitled to rely on the plain terms of the collective bargaining agreements to determine eligibility and is not bound by any understandings or practices by or between the union or the employer to vary the express terms of the written agreements. *See, e.g, Varco,* 338 F.3d at 691 ("Oral understandings and practices may not be used to vary pension promises"); *Central States, Southeast and South West Areas Pension Fund v. Ryan Transfer and Storage Co.,* 2000 U.S. Dist. LEXIS 13773, *16-22 (N.D.Ill. September 13, 2000) (rejecting employer's argument that certain employees waived coverage or were not covered under past practice, as "[p]ast practice cannot modify clear contract language").

Adkins also alleges that the Plan "has granted pension credits for similarly situated employees of Gas City, Ltd. and A.D. Conner, Inc. who were performing the same work as Adkins." Complaint, ¶ 17. The allegation is not true. *See, e.g.,* Defendant's Reply in Support of Its Motion for Summary Judgment, dated August 21, 2009, at 9-11 (demonstrating in prior summary judgment proceeding that employees cited by Adkins are not "similarly situated"). In any event, Adkins' allegation is irrelevant and cannot create a question of material fact.

As the Seventh Circuit has explained in rejecting similar "fairness" allegations, "[i]t is not enough, though, to point out that pension credit or benefits have been awarded to another person" because "[i]t is possible, for example, that a fund might erroneously award benefits to a

participant, but that would not mean that it was bound to repeat its error with others who came

along." *Perry v. Sheet Metal Workers' Local No. 73 Pension Fund,* 585 F.3d 358, 364 (7th Cir.

2009) (rejecting argument that fund unfairly covered an allegedly similarly-situated employee

but not plaintiffs and affirming district court's decision to grant summary judgment in favor of

the fund). Or, as the Seventh Circuit stated in a different case:

> It is more than a little difficult to see why plaintiffs, whose
> applications were correctly denied under the program's stated
> criteria, should be entitled to relief because [defendant] was unduly
> generous with other employees. If this were a medical benefits
> program, would one decision to pay for an un-covered medical
> procedure (say, a dental implant in lieu of a bridge) entitle every
> other employee to reimbursement for that procedure? An
> employer is supposed to apply the plan's written terms, and
> departure from those terms on one occasion does not estop the
> employer to enforce them on others. Plaintiffs suggest that every
> divergence from a plan's criteria is an "amendment" of the plan
> entitling them to the same benefits, but that is a non-starter ....
> Amendments are accomplished through a formal process and
> produce a revised written instrument. **Deviations from a plan are
> just that – deviations. The plan remains what it was, and
> claims for benefits continue to be evaluated in light of its
> written criteria.**

*McNab v. General Motors Corp.,* 162 F.3d 959, 961 (7th Cir. 1998) (emphasis supplied). *See*

*also RLJCS v. Professional Benefit Trust Multiple Employer Welfare Benefit Plan and Trust,* 487

F.3d 494, 497-98 (7th Cir. 2007) (noting that paying out benefits to which plaintiffs were not

entitled under the trust terms "would leave less for other participants in the Trust," and

explaining that "[e]very participant gets his entitlement under the plan's terms, no less and no

more; no participant is entitled to a windfall, no matter how earnestly one was promised and no

matter how many mistaken payments the plan may have made before it finally got things right").

Adkins' claim must stand or fall on its own merits. The plain terms of the Plan bar her claim.

Given the foregoing, the Plan's conclusion that Adkins is not entitled to Plan benefits

easily satisfies the deferential arbitrary-and-capricious standard of review.

9

**B.    Adkins has no standing to seek "restitution" from the Plan and, in any event, the balance of equities does not warrant "restitution"**

The Plan also is entitled to summary judgment on Count II, Adkins' alternative claim for equitable "restitution" under federal common law. Adkins has no standing to seek equitable "restitution" of contributions mistakenly made by her employer, as only an employer may (under some circumstances) seek the return of overpayments or mistaken contributions it has made to an ERISA pension plan. In any event, the balance of equities do not justify restitution to Adkins.

Courts have held that **employers** may assert a federal common law claim for restitution of pension contributions the employers mistakenly made to ERISA pension plans, but have rejected **employees'** claims for restitution of such contributions. *See, e.g., Flynn v. Hach,* 138 F.Supp.2d 334, 351-52 (E.D.N.Y. 2001) (noting that courts have held that employers may bring claims for equitable restitution but granting defendants' motion for summary judgment on plaintiff's claim for equitable restitution of contributions erroneously made on his behalf *inter alia* because "Flynn is not an *employer* suing for restitution of monies erroneously paid by him into a pension fund" and that "whatever claim [the contributing entity] may have to the restitution of the overpayments it made on plaintiff's behalf, it hardly appears that equity demands restitution of these monies to Flynn") (italics in original). *Cf. Chase v. Trs. Of W. Conference of Teamsters Pension Fund,* 753 F.2d 744, 753-54 (9th Cir. 1985) (Judge Reinhardt concurring in judgment that owners of the taxicab cooperative that made mistaken contributions to the defendant fund could sue for restitution but stating that he "did not believe that [ERISA] contemplates that individual employees shall ordinarily have the right to institute suit for such refunds"); *Kolbe & Kolbe Health and Welfare Ben. Plan v. Kolbe & Kolbe Millwork Co., Inc.,* 690 F.Supp.2d 778, 783 (W.D.Wis. 2010) (refusing to imply right of benefit plan to bring claim for restitution of mistakenly paid benefits, noting that "in those cases in which the court of

appeals has allowed a federal common law restitution action, the action was brought by an *employer* for the refund of a mistaken overpayment") (italics in original). *See also Rochetti v. American Fed. Of Musicians' and Employers' Pension Welfare Fund,* 1987 U.S. Dist. LEXIS 8037, *22-27 (N.D.Ill. August 13, 1987) (granting funds' motion to dismiss musicians' claim seeking to recover contributions mistakenly made on their behalf and refusing to imply a right to restitution); *Rhinehart v. United Brotherhood of Carpenters Pension Fund,* 191 F.Supp.2d 1283, 1291-92 (W.D.Okla. 2001) (plaintiff's claim for restitution of contributions mistakenly made by his employer "has no basis in law" and granting fund's motion for summary judgment).

The distinction is understandable when one considers the rationale for employer restitution claims under the federal common law. In *UIU Severance Pay Trust Fund v. Local Union No. 18-U, United Steelworkers of America,* 998 F.2d 509 (7th Cir. 1993), the Seventh Circuit agreed that the creation of federal common law is appropriate to fill in ERISA's interstices to effectuate the statute enacted by Congress. *UIU,* 998 F.2d at 512, 512 n.10. Citing specific ERISA provisions, the Court determined that permitting employers to seek restitution of mistaken contributions under federal common law was necessary to fully effectuate the statute:

> ERISA *permits* plan trustees to return to employers payments made to a plan which are the result of a mistake of law or fact, but it does not establish a cause of action by which employers may seek to *compel* such a refund. Absent a judicially-crafted cause of action, employers are left to the mercy of plan trustees who have no financial incentive to return mistaken payments. **Employers already are penalized for failing to make required contributions. If they are not permitted to seek recovery of mistaken contributions they may be less inclined to sponsor ERISA-qualified plans at all. This would undermine ERISA's goal of expanding pension and welfare benefit plan coverage.**

*Id.* at 512-13 (italics in original; other emphasis supplied; citations omitted). There are no analogous provisions relating to **employees** and therefore no corresponding need to create common law claims on their behalf to fill in the interstices of ERISA.

Nevertheless, Adkins relies on the Seventh Circuit's decision in *Constr. Indus. Ret. Fund v. Kasper Trucking, Inc.,* 10 F.3d 465 (7th Cir. 1993) to support her claim for equitable restitution. In *Kasper*, the employer used the services of drivers who owned their own rigs. *Kasper,* 10 F.3d at 466. Initially, the employer agreed to treat them as employees for purposes of pension and health coverage, "deducting money from their pay and remitting the sums to multi-employer plans covered by [ERISA]." *Id.* at 467. The funds in turn segregated the employer's contributions in separate accounts in the name of each driver. *Id.* at 467, 468. Subsequently, the employer decided that the drivers should be classified as independent contractors, who could not participate in the plans, and sought a refund of the contributions from the funds. *Id.* at 467. Conceding that it had no claim to the contributions but fearing duplicative recoveries, the pension fund filed an interpleader action offering to pay the money to its rightful owner and both the employer and some (but not all) of the drivers filed claims. *Id.* The district court *inter alia* awarded pension fund accounts to the drivers in whose names the funds were held but denied the employer's claim. *Id.* The Seventh Circuit affirmed.

On appeal, the Seventh Circuit found that the pension contributions in fact were part of the compensation package originally negotiated between the employer and the drivers – "Kasper and its drivers agreed that Kasper, instead of paying all cash for labor and vehicles, would pay partly in cash and partly in pension contributions." *Kasper,* 10 F.3d at 469 (emphasis supplied). Although Kasper later tried to alter this arrangement, the drivers already had earned those contributions and the right to this deferred compensation through their labor under the terms of the original agreement. If the drivers no longer were entitled to participate in the defendant pension plan, the court reasoned that "there are two other ways to reach the same objective: Kasper may take the money and buy annuities for the benefit of the drivers; or the drivers may

take the money and buy their own annuities (or make equivalent investments), using the pension rollover features of the tax law." *Id.* Thus, the Seventh Circuit held:

> What decides this case, therefore, **is the use Kasper proposes to make of the money: Kasper wants to put the cash in the corporate treasury** without funding substitute pension vehicles for the drivers. *That* outcome **would be inconsistent with the parties' bargain of cash now and retirement income later.** The district court therefore properly awarded the money to the drivers.

*Id.* (italics in original; other emphasis supplied).

*Kasper* plainly does not create a federal common law right for employees to seek restitution of their employer's mistaken contributions from multiemployer pension plans and does not purport to do so. The pension fund affirmatively disclaimed any interest in the contributions at issue. That is why the fund filed an interpleader action – the **only** persons who had **any** plausible claim to the contributions were the drivers or the employer. The contributions were segregated in separate accounts in the name of each driver. The contributions therefore were identifiable, obviously associated with particular persons, and refunding the contributions would not reduce the pension "accounts" of any other fund participant. Accordingly, the equitable issue decided in *Kasper* was **very** limited – the **only** question presented and decided was who had the better claim to the contributions **between the drivers and the employer**.

The instant facts are much different from those in *Kasper*. The Plan asserts a competing claim to the contributions at issue on behalf of bona fide participants. All contributions by A.D. Conner are pooled by the Plan – there is no Brenda Adkins "account" that holds "her" contributions separate from those of other participants. Refunding the disputed contributions necessarily will reduce the total funds available for all bona fide Plan participants. Moreover, the Plan currently is suing A.D. Conner to recover hundreds of thousands of dollars in delinquent contributions and A.D. Conner might be able to assert any mistaken contributions, including the

13

contributions it made on Adkins' behalf, as an offset against the amounts it owes the Plan and participants. Recovery by Adkins here might expose the Plan (and bona fide participants) to a net loss of contributions that should have been made by A.D. Conner, even if the Plan successfully recovers all amounts due in its lawsuit against A.D. Conner. *Kasper* did not address and does not resolve such competing claims and interests.

But even if, like some employers, Adkins had standing to assert a claim for restitution under federal common law – and she does not – "recovery will not follow automatically upon a showing that [more contributions were made] than required but only if the equities favor it." *UIU*, 998 F.2d at 513 (citation and internal quotations omitted). Here, the balance of equities demonstrates that awarding the contributions at issue to Adkins would be **inequitable**.

As set forth above, under the express terms of the collective bargaining agreement, Adkins never was a bargaining unit member, never performed bargaining unit work, and never was entitled to have pension contributions made on her behalf. Moreover, the contributions did not come out of Adkins' pocket. Thus, Adkins seeks a windfall and "equity ... abhors a windfall." *The Prudential Ins. Co. of America v S.S. American Lancer,* 870 F.2d 867, 871 (2d Cir. 1989).

On the other hand, as discussed above, permitting Adkins to recover A.D. Conner's mistaken contributions here might expose the Plan (and bona fide participants) to a net loss of contributions that should have been made by A.D. Conner, even if the Plan successfully recovers all amounts due in its lawsuit against A.D. Conner. *See Flynn,* 138 F.Supp.2d at 353 (denying federal common law restitution claim by employee and noting that, if such claims are permitted, "funds may find it difficult to set aside accurate reserves to cover future claims, with the result that beneficiaries of the funds may be undercompensated as a result of conservative judgments as

to such reserves," and that the "problem may be exacerbated if plans had to anticipate restitution claims by unsuccessful participant claimants as well as by contributing employers," as an "employer overpayment claim can often be dealt with simply by offsetting future obligations against the overpayment, but an unsuccessful participant claimant is generally seeking a cash award, which could more directly affect the stability of the fund's asset reserves" and this "runs contrary to the touchstone of ERISA, which is the protection of the financial integrity of multiemployer pension funds") (citations and internal quotation marks omitted).

In sum, "restitution" is not warranted, as the Plan's retention of A.D. Conner's mistaken contributions does not constitute unjust enrichment and awarding the contributions to Adkins would result in a windfall, could harm the financial integrity of the Plan, and would unfairly penalize bona fide Plan participants on whose behalf A.D. Conner should have made contributions but did not.

## IV.    Conclusion

For all the reasons set forth above, The Local 705 International Brotherhood of Teamsters Pension Plan respectfully prays that the Court enter an order granting judgment in its favor and against Brenda Adkins, denying all relief sought by Brenda Adkins, and awarding such other relief as the Court deems just and proper.

Dated:  May 6, 2011                                  Respectfully submitted,

                                                     LOCAL 705 INTERNATIONAL
                                                     BROTHERHOOD OF TEAMSTERS
                                                     PENSION PLAN

                                            By:      s/Edward M. Graham
                                                              One of Its Attorneys

James P. Daley
Edward M. Graham
**K&L Gates LLP**
70 W. Madison Street, Suite 3100
Chicago, Illinois  60602
(312) 372-1121

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that a true and correct copy of the above and foregoing Defendant's Memorandum of Law in Support of Its Motion for Summary Judgment was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing, on this 6th day of May 2011, to the following:

> David R. Shannon
> Tenney & Bentley, LLC
> 111 W. Washington Street, Suite 1900
> Chicago, Illinois 60602

> s/Edward M. Graham
> Edward M. Graham

592704/C/1