```
                IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF ILLINOIS
                         EASTERN DIVISION

BRENDA ADKINS,                     )
                                   )
             Plaintiff,            )
                                   )
     v.                            )    No. 10 c 8279
                                   )
LOCAL 705 INTERNATIONAL            )
BROTHERHOOD OF TEAMSTERS PENSION   )
FUND,                              )
                                   )
             Defendant.            )
```

## MEMORANDUM OPINION AND ORDER

Brenda Adkins ("Adkins") brings this action against Local 705 International Brotherhood of Teamsters Pension Fund ("Fund"), charging Fund with violating Employee Retirement and Security Act ("ERISA") Section 502(a)(1)(B)[1] and asserting an entitlement to restitution under federal common law.[2] Adkins has moved for summary judgment under Fed. R. Civ. P. ("Rule") 56 on the ERISA count, while Fund has moved for the same on both counts. For the reasons stated in this memorandum opinion and order, Fund's Rule 56 motion is granted as to both counts, resulting in the dismissal of this action.

---

[1] ERISA caselaw sometimes employs ERISA's internal section numbering (the usage in the text), while at other times it cites to the Title 29 numbering (which in this instance would be 29 U.S.C. §1132(a)(1)(B)).

[2] Adkins brings this action to this Court for a second time. This Court previously dismissed Adkins' earlier lawsuit because of her then failure to have exhausted administrative remedies (Adkins v. Local 705 Int'l Bhd. of Teamsters Pension Plan, No. 08 C 3217, 2009 WL 2704578 (N.D. Ill. Aug. 25)).

**Summary Judgment Standard**

Every Rule 56 movant bears the burden of establishing the absence of any genuine issue of material fact (Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). For that purpose courts consider the evidentiary record in the light most favorable to nonmovants and draw all reasonable inferences in their favor (Lesch v. Crown Cork & Seal Co., 282 F.3d 467, 471 (7th Cir. 2002)). But a nonmovant must produce more than "a mere scintilla of evidence" to support the position that a genuine issue of material fact exists (Wheeler v. Lawson, 539 F.3d 629, 634 (7th Cir. 2008)) and "must come forward with specific facts demonstrating that there is a genuine issue for trial" (id.). Ultimately summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant (Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

One more complexity is added where, as here, cross-motions for summary judgment are involved. Those same principles require the adoption of a Janus-like perspective: As to each motion the nonmovant's version of any disputed facts must be credited. What follows, then, is a summary of the undisputed facts that pose no such complexity.[3]

---

[3] Because the current dispute does not involve substantial factual development beyond those facts averred in the complaint, this Court did not require the parties to provide LR 56.1 factual statements. This opinion is therefore grounded on Adkins' Complaint as well as other relevant and undisputed core documents

**Factual Background**[4]

Adkins was employed as a dispatcher by Gas City, Ltd. and its successor A.D. Conner from February 1995 to November 2006 (¶3). Throughout that period both employers made pension contributions to Fund on behalf of members of the bargaining unit covered by their collective bargaining agreements ("CBAs") with the International Brotherhood of Teamsters AFL-CIO ("the Teamsters") (¶3). After Adkins became a member of the Teamsters in February 2003, A.D. Conner made such contributions to Fund on Adkins' behalf (¶3).

Adkins received statements from Fund in 2004 reflecting no pension credits for any year before 2003 (¶14). She then requested that Fund reflect such credits (¶¶14-15). After Fund refused, Adkins brought this action (¶18).

**Benefits Under CBAs**[5]

Adkins contends that there are disputed issues of material fact that preclude summary judgment on Count I, in which she

---

submitted in conjunction with the present motions.

[4] Citations to the Complaint will simply take the form "¶--."

[5] This opinion identifies Adkins' and Fund's respective memoranda as "A." and "F." followed by appropriate designations as "Mem. --" and "Resp. Mem. --." In a commendable effort to minimize the size of the current submissions, both parties have referred this Court to their summary judgment memoranda in the previous iteration of this case (see n.2). Those memoranda will be cited by including the number "08."

3

claims she is entitled to benefits under the terms of the relevant CBAs and pension plan documents (A. Mem. 1). For its part, Fund focuses on the text of those agreements and other documents in arguing that there are no disputed issues of material fact to prevent this Court from granting its motion for summary judgment on Count I (F. Mem. 5-9). Fund has the better of that quarrel by a wide margin.

Where a pension plan administrator with vested discretion denies a claimant's request for benefit eligibility, courts employ the deferential arbitrary-and-capricious standard of review (Ramsey v. Hercules Inc., 77 F.3d 199, 202 (7th Cir. 1996)). Because of concern about the difficulty of clearly indicating the grant of that discretion in plan documents, Herzberger v. Standard Ins. Co., 205 F.3d 327, 331 (7th Cir. 2000) drafted this "safe harbor" language for ERISA plans to guarantee such a standard of review:

> Benefits under this plan will be paid only if the plan administrator decides in his discretion that the applicant is entitled to them.

Courts uphold a plan administrator's decision under arbitrary-and-capricious review "so long as it is based on a reasonable interpretation of the plan's language and the evidence in the case" (Daill v. Sheet Metal Workers' Local 73 Pension Fund, 100 F.3d 62, 68 (7th Cir. 1996)).

Section 8.3 of the relevant pension plan document (F. Mem.

4

Ex. 2) employs the safe harbor language prescribed in <u>Herzberger</u>. That being so, the administrator's decision here is entitled to the arbitrary-and-capricious standard of review. And it takes little discussion to see that Fund clearly prevails under that deferential standard.

Both parties agree that Adkins does not qualify as a member of the bargaining unit as defined in the CBAs (F. Mem. 5-6; 08 A. Mem. 4-5). Specifically, Art. 1 §4 of the relevant CBAs (F. Mem. Ex. 1) expressly limits the bargaining unit to "drivers...who make deliveries" and does not include "dispatchers" such as Adkins:

> The bargaining unit shall consist of all Employer's drivers employed at locations within the bargaining area who make deliveries of [various specified and related products].

It is undisputed that Adkins is not a driver, nor does she perform the duties of a driver.

In the face of such clear language, Adkins argues that the custom and practice of A.D. Conner, the Teamsters and Fund determine the meaning of the term "drivers" and that Adkins is a bargaining unit employee under that custom and practice (08 A. Mem. 4-7). In suggesting such a departure from the plain and unambiguous text of the CBAs, Adkins points only to the Supreme Court's decision in <u>Consol. Rail Corp. v. Ry. Executives' Ass'n</u>, 491 U.S. 299 (1989). But that is not even a weak reed on which to rely--as the Court said there (<u>id</u>. at 311):

5

> Neither party relies on any express provision of the agreement; indeed, the agreement is not part of the record before us.

Consol. Rail, id. at 311-12 then went on to counsel that although courts may need to look to custom and practice in interpreting generalized terms in a CBA, they do not do so when (as here) the draftsmen have fully anticipated the relevant circumstances in express language.

Furthermore, in the ERISA context it is particularly important to ensure the integrity of the language of pension plans and their underlying agreements (Admin. Comm. of Wal-Mart Stores, Inc. v. Varco, 338 F.3d 680, 690 (7th Cir. 2003)). Hence courts do not use extrinsic evidence to depart from the express terms of the underlying agreements (Cent. States, S.E. & S.W. Areas Pension Fund v. Cent. Cartage Co., 69 F.3d 1312, 1315 (7th Cir. 1995)).

Adkins argues that because her employers, the Teamsters and Fund acted as if she and some other dispatchers were members of the bargaining unit, the definition of "driver" in the CBA impliedly includes dispatchers (08 A. Mem. 4-7). Any such treatment of non-driver employees in flat-out contradiction of the underlying documents' express language was simply erroneous, and Fund is not bound by any such previous errors (Perry v. Sheet Metal Workers Local No. 73 Pension Fund, 585 F.3d 358, 364 (7th

6

Cir. 2009)).[6] That principle is best understood in the context of pension plans, where the erroneous payment of benefits to one participant would leave other--and proper--participants in a worse financial position (RLJCS Enters., Inc. v. Prof'l Benefit Trust Multiple Employer Welfare Benefit Plan & Trust, 487 F.3d 494, 497-98 (7th Cir. 2007)).

Adkins' arguments are therefore unavailing, and they certainly do not demonstrate that Fund's denial of her benefits in accordance with the express definition of the bargaining unit--a definition that plainly excludes dispatchers--was arbitrary and capricious. Because Fund's decision was sound and was based on the unambiguous language of the CBAs underlying the relevant pension plan, Fund's motion for summary judgment on Count I is granted.

## "**Restitution**"

Adkins advances a second contention--one that asserts that even if she is not a member of the relevant bargaining unit, she is still entitled to recover the value of her alleged pension benefits[7] as a form of what she mischaracterizes as "restitution" of the payments that her employers mistakenly made to Fund on her

---

[6] See Appendix.

[7] Note the inherent fallacy in Adkins' arguments. What she is saying is that even if she may not be entitled to deferred pension benefits, she has a right to have them paid over to her as current added compensation. In the universe that she occupies, "no right" is somehow transformed into "right."

7

behalf (A. Mem. 2-8). For its part, Fund responds that although in certain circumstances <u>employers</u> can recover for mistakenly made benefit payments on a restitution theory, no such recovery is available to employees (F. Mem. 10-15).[8] Once again Fund prevails beyond dispute.

Both parties agree that employers can seek restitution under federal common law for mistaken contributions to pension plans (<u>UIU Severance Pay Trust Fund v. Local Union No. 18-U, United Steelworkers of Am.</u>, 998 F.2d 509, 512-13 (7th Cir. 1993)). Adkins attempts to extend that restitution theory to employees who demand payment from pension plans when employers have made mistaken contributions based on their compensation. But Fund correctly points out that such a quantum leap has been rejected by virtually every court that has previously considered any such theory (F. Mem. 10-11).

Instead of grappling directly with the issues raised by such cases, Adkins attempts to rely primarily on a decision in an interpleader action brought by a pension fund to determine to whom it should disgorge mistaken contributions (<u>Constr. Indus. Ret. Fund of Rockford v. Kasper Trucking, Inc.</u>, 10 F.3d 465 (7th Cir. 1993)). But Adkins' situation differs in critical ways from

---

[8] As Adkins correctly suggests (A. Resp. Mem. 2-3), this is not a technical issue of standing as sometimes seen in the ERISA context (F. Mem. 10-11), but rather a question of whether there is a federal common law claim available to Adkins.

8

the scenarios in both UIU Severance and Kasper.[9]

First, to the extent that UIU Severance created what it characterized as an extraordinary right of restitution for employers under federal common law in the ERISA context, it did so because such employers are liable for failing to make required contributions, so that the repayment of mistaken contributions tends to foster a level playing field (UIU Severance, 990 F.2d at 512-13). There is of course no analogous obligation on employees.

As for Kasper, for this Court to embrace Adkins' reading of that case would assume that the court there engaged in a sub rosa extension of a limited federal common law right in a way that was at odds with the otherwise unanimous caselaw (including Seventh Circuit cases) going the other way. On the contrary, it must be remembered that wholly unlike Adkins' situation, the plan participant in Kasper had a portion of her own wages deducted for the purpose of contributing to the pension fund (Kasper, 10 F.3d at 469). That case involved a "compensation package" that

---

[9] Adkins' Resp. Mem. 3-4 finally adduces just one case that has sided with her contention--Thomas v. Board of Trustees of Int'l Union of Operating Eng'rs, Local 542, No. 97 C 2423, 1998 WL 334627, at *11-*12 (E.D. Pa. June 24). Not only does that case go against the mass of relevant authority, but it is out-of-circuit, nonprecedential and unpublished, and it does not at all address the important distinctions discussed in the text. As with all District Court opinions (including those by this Court), Thomas would have credence only if a later District Judge were to find it persuasive. In a word, this Court does not.

9

"instead of paying all cash for labor and vehicles, would pay partly in cash and partly in pension contributions" (id.).

Under those circumstances, a decision returning the money to the employer instead of the employee "would be inconsistent with the parties' bargain of cash now and retirement income later" (id.). Adkins' situation is vitally different, precisely because the CBAs did not provide her with any such bargain with her employer.

In candor, for Adkins' counsel to attach the misleading label of "restitution" to her effort to latch onto other peoples' entitlements masks nothing but sheer greed. Think about it: Every employee's compensation package comprises a combination of (1) what the employee gets in his or her paycheck and (2) the fringe benefits that go with the job. One important fringe benefit is in the form of the employer's contribution toward retirement benefits. And when Adkins asks for a current payment of cash to which she has no entitlement,[10] she is seeking to get her hands on money that her fellow employees (those entitled to participate in the employee benefit fund, as she is not) can get only in the future as and when they satisfy the fund's terms as to retirement.

If Adkins were to succeed, that would be nothing more or

---

[10] Remember that this "fallback" position comes into play after it has already been determined that she is not entitled to the funds under the controlling documents.

less than cheating the system.  This Court will not permit her to do so.  There is no credible basis for Adkins' theory of restitution--and that being so, Fund is entitled to summary judgment on Adkins' Count II as well.

## Conclusion

With no genuine issue of material fact having been identified, Fund is entitled to judgment as a matter of law on both of Adkins' claims.  Fund's Rule 56 motion is granted in its entirety, while Adkins Rule 56 motion is denied.  This action is dismissed with prejudice.

_____
Milton I. Shadur
Senior United States District Judge

Date:  May 26, 2011

## Appendix

Something needs to be said about Adkins' attempt to undercut the Plan's language as to coverage (which could not be more clear) by pointing to Fund's failure to police errors made by participating employers who may mistakenly include non-bargaining-unit employees in their reports and remittances. Any such failures are unsurprising where, as here, the administrators of a multi-employer plan covering hundreds or thousands of employees cannot reasonably be expected to check, on a routine basis, the eligibility of each employee for whom a contribution is made by an employer. What is routine, and what has in fact taken place in this instance, is that a plan conducts an audit of the eligibility of relevant employees when a question is raised about the eligibility of a particular employee or class of employees (F. 08 R. Mem. 11).

This practical reality aside, Adkins is not aided by her recital of a string of rhetorical questions about specific dispatchers and mechanics or her citation to supposedly relevant cases (A. Resp Mem. 1). First, she adduces no actual evidence that other dispatchers have receives pension benefits (08 A. Mem. 6-7). Instead, she impermissibly infers the existence of such benefits from previous settlements, in addition to pure speculation that other dispatchers have received such benefits (F. 08 R. Mem. 8-10).

Even if Adkins' allegations of differential treatment could

be properly supported, though, the cases she cites highlight only the fact that inconsistent application of plan terms that are undefined may require reversal of a plan administrator's decision (see, e.g., Gallo v. Amoco Corp., 102 F.3d 918, 922 (7th Cir. 1996)). This is wholly consistent with this Court's decision here, where by contrast the relevant terms are specifically defined, so that any inconsistency is appropriately considered error.